## No. 24-135

# United States Court of Appeals for the Federal Circuit

IN RE DAVID'S DOZER V-LOC SYSTEM INC.,
DAVID ARMAS,

*Petitioners*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, NO. 1:23-CV-24931-CMA, JUDGE CECILIA M. ALTONAGA

### RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Brandon Brown
KIRKLAND & ELLIS LLP
555 California Street
27th Floor
San Francisco, CA 94104
(415) 439-1400

Gregg LoCascio
Jason M. Wilcox
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

*Counsel for Respondents*

July 11, 2024

# CERTIFICATE OF INTEREST

1. **Represented Entities (Fed. Cir. R. 47.4(a)(1)):**

   Deere & Company, John Deere Construction & Forestry Company, Dobbs Equipment, LLC, EFE Inc. d/b/a/ Everglades Equipment Group

2. **Real Party in Interest (Fed. Cir. R. 47.4(a)(2)):**

   N/A

3. **Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)):**

   Deere & Company is the parent of John Deere Construction & Forestry Company; DJD Equipment Holdings, LLC is the parent of Dobbs Equipment, LLC.

4. **Legal Representatives (Fed. Cir. R. 47.4(a)(4)):**

   GrayRobinson, P.A.; Nathan Mammen; Yimeng Dou; Yungmoon Chang

5. **Related Cases (Fed. Cir. R. 47.5(a)).** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   No.

6. **Organizational Victims and Bankruptcy Cases (Fed. R. App. P. 26.1(b)-(c)):**

   N/A

# TABLE OF CONTENTS

INTRODUCTION ..................................................................... 1

I.  Background.................................................................... 3

    A.  Factual Background..................................................... 3

    B.  Procedural Background. ................................................ 5

Reasons For denying the Writ .................................................. 9

I.  The District Court Appropriately Weighed The Choice-Of-Forum, Locus Of Operative Facts, And Relative Means Factors ..................................................................... 10

    A.  The District Court Was Not Required To Defer To Petitioners' Choice Of Forum ............................... 12

    B.  The District Court Correctly Found That The "Locus of Operative Facts" Is In Iowa.................................. 16

    C.  The District Court Correctly Found That The Relative Means Factor Is Neutral...................................... 24

II. The District Court's Analysis of The Remaining Factors Was Not An Abuse of Discretion........................................... 27

Conclusion........................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Biosci., Inc. v. Mayne Pharma (Usa)*,
  467 F.3d 1370 (Fed. Cir. 2006) ............................................................ 28

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ................................................................................ 21

*In re Apple Inc.*,
  2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ...................................... 17

*Balloveras v. Purdue Pharma Co.*,
  2004 WL 1202854 (S.D. Fla. May 19, 2004) ....................................... 12

*In re Barnes & Noble, Inc.*,
  743 F.3d 1381 (Fed. Cir. 2014) ............................................................ 14

*Bartolon-Perez v. Island Granite & Stone, Inc.*,
  2014 WL 12513973 (S.D. Fla. Aug. 25, 2014) .................................... 25

*In re BayCare Med. Grp., Inc.*,
  101 F.4th 1287 (11th Cir. 2024) ............................................................ 9

*Betty K Agencies, Ltd. v. M/V MONADA*,
  432 F.3d 1333 (11th Cir. 2005) ..................................................... 19, 26

*Bouazizi v. Hillsborough Cnty. Civ. Serv. Bd.*,
  844 F. App'x 135 (11th Cir. 2021) ................................................. 14, 21

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
  157 F. Supp. 3d 1219 (S.D. Fla. 2016) ..................................... 17, 19, 27

*EasyWeb Innovations, LLC v. Facebook, Inc.*,
  888 F. Supp. 2d 342 (E.D.N.Y. 2012) .................................................. 24

*Fruitstone v. Spartan Race Inc.*,
  464 F. Supp. 3d 1268 (S.D. Fla. 2020) ................................................ 30

*Grail Semiconductor, Inc. v. Stern*,
2013 WL 2243961 (S.D. Fla. May 21, 2013) ...................................... 25

*Grayson v. K Mart Corp.*,
79 F.3d 1086 (11th Cir. 1996) .......................................................... 9

*Hampton-Muhamed v. James B. Nutter & Co.*,
687 F. App'x 890 (11th Cir. 2017) ...................................................... 12

*In re Haptic, Inc.*,
2024 WL 3159288 (Fed. Cir. June 25, 2024) ...................................... 19

*Heiber Patent Licensing Corp. v. Wazana Bros. Int'l*,
2010 WL 11626581 (M.D. Fla. Mar. 5, 2010)................................ 19, 20

*Huntley v. Chicago Bd. of Options Exch.*,
132 F. Supp. 3d 1370 (N.D. Ga. 2015).............................................. 24

*Implant Seminars, Inc. v. Lee*,
2019 WL 1979365 (S.D. Fla. May 3, 2019) ........................................ 12

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005)............................................................ 11

*Mars, Inc. v. H.J. Heinz Co., L.P.*,
377 F.3d 1369 (Fed. Cir. 2004) .......................................................... 29

*Mason v. Smithkline Beecham Clinical Lab'ys*,
146 F. Supp. 2d 1355 (S.D. Fla. 2001).............................................. 30

*In re Mayfonk, Inc.*,
554 F. App'x 943 (Fed. Cir. 2014)................................................ *passim*

*Mayfonk, Inc. v. Nike, Inc.*,
2013 WL 12085086 (S.D. Fla. June 17, 2013) .................................... 21

*MindbaseHQ LLC v. Google LLC*,
2021 WL 1923142 (S.D. Fla. May 13, 2021) .................... 17, 19, 21, 26

*Moghaddam v. Dunkin Donuts, Inc.*,
2002 WL 1940724 (S.D. Fla. Aug. 13, 2002) ...................................... 12

iv

*Motorola Mobility v. Microsoft Corp.,*
    804 F. Supp. 2d 1271 (S.D. Fla. 2011)............................................ 12, 19

*Osgood v. Disc. Auto Parts, LLC,*
    981 F. Supp. 2d 1259 (S.D. Fla. 2013)................................................ 24

*Phigenix, Inc. v. Genentech, Inc.,*
    2015 WL 10910488 (N.D. Ga. Mar. 12, 2015) .................................... 21

*RegenLab USA LLC v. Estar Techs. Ltd.,*
    2017 WL 3535008 (S.D.N.Y. Aug. 17, 2017) ..................................... 22

*Roofing & Sheet Metal Servs., Inc. v. La Quinta*
    *Motor Inns, Inc.,*
    689 F.2d 982 (11th Cir. 1982) ............................................................ 10

*In re Segal,*
    2011 WL 1582517 (11th Cir. Apr. 21, 2011) ................................. 10, 19

*Soler v. Indymac Mortg. Servs.,*
    2015 WL 3952620 (S.D. Fla. June 29, 2015) ..................................... 27

*Trace-Wilco, Inc. v. Symantec Corp.,*
    2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ............................. 12, 14, 19

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008) ..................................................... 22, 23

*United States v. Engelhard Corporation,*
    126 F.3d 1302 (11th Cir. 1997) .......................................................... 18

*United States v. Shalhoub,*
    855 F.3d 1255 (11th Cir. 2017) ...................................................... 9, 26

*Windmere Corp. v. Remington Prods., Inc.,*
    617 F. Supp. 8 (S.D. Fla. 1985) .......................................................... 12

*zIT Consulting GmbH v. BMC Software, Inc.,*
    2016 WL 231215 (M.D. Fla. Jan. 15, 2016) ....................................... 24

**Statutes**

28 U.S.C. § 1404(a) ........................................................... *passim*

# INTRODUCTION

This patent infringement and false advertising case presented a strong and straightforward candidate for transfer under 28 U.S.C. § 1404(a). David Armas and his company David's Dozer V-Loc System Inc. ("Petitioners") are located in Florida, but the ties between this action and the Southern District of Florida are otherwise minimal. The center of gravity for this dispute is instead in the Northern District of Iowa.

Every aspect of this case turns on events that happened in the Northern District of Iowa. That district is where John Deere Construction and Forestry Company employees primarily developed the accused products. Transporting those 14,000-pound pieces of equipment from Iowa to Florida for hearings or trial would be a significant burden. The Northern District is also where marketing decisions, pricing strategies, and sales decisions were primarily made for the accused products. Not surprisingly, that means almost all of the potential party and non-party witnesses familiar with the design, development, and marketing of the accused products live and work in the Northern District. The named inventors on four Deere patents that Petitioners claim should have listed Armas as an inventor are based in the Northern District as well.

Given these deep Iowa roots, the district court did not abuse its discretion by transferring this case to the Northern District of Iowa. Petitioners' contrary arguments all either challenge how much weight the district court gave to various transfer factors or fault the district court for following well-established precedent in the Southern District of Florida. But there was nothing wrong with the district court's conclusion that, given the dispute's strong and almost exclusive ties to Iowa, those ties overcame Petitioners' desire to litigate in their home forum.

The district court likewise did not err by treating the jurisdiction where the accused products were developed as the locus of operative facts, rather than the jurisdiction where Petitioners conceived of the asserted patent. Courts across the country routinely make the same judgment. Indeed, this Court previously denied a mandamus petition from the Southern District of Florida where the district court treated the place where the accused products were developed as the center of gravity for the case and gave that factor more weight than the plaintiff's choice of forum. *See In re Mayfonk, Inc.*, 554 F. App'x 943, 943-44 (Fed. Cir. 2014).

Petitioners' grab-bag of other disagreements with the district court's decision fare no better. Petitioners have not shown any error in

the district court's reasoning, much less the clear abuse of discretion necessary for the extraordinary remedy of mandamus—a remedy the Eleventh Circuit has said is almost never warranted when challenging a transfer order. The Court should deny the petition.

## I.    Background

### A.    Factual Background

This is a patent infringement dispute involving claims for infringement, false advertising, and correction of inventorship. Appx444-49. One of the petitioners, David Armas, is a named inventor on U.S. Patent No. 10,533,300, which claims a method for hydraulically locking a bulldozer's boom arm in a downward position while a user operates an attachment, such as a dozer blade. Appx435; Appx440-41. The other petitioner, David's Dozer V-Loc System Inc., owns the patent. Appx437. Petitioners allegedly developed this technology in the Southern District of Florida, where they both reside. Appx435-36.

Petitioners claim that they first demonstrated their V-Loc System (a commercial product used for hydraulically locking a boom arm) at a road show in Las Vegas in 2018. Appx437. At the time, Petitioners were collaborating with another company, Topcon Positioning Systems, Inc. ("Topcon"), which used GPS technology to control the blade of the dozer.

*Id.* A few months later, Petitioners allege that Topcon showcased a V-Loc System on a bulldozer manufactured by Respondent John Deere Construction and Forestry Company at a road show in Oklahoma. Appx438. Shortly after that roadshow, in August 2018, Armas applied for a patent claiming his alleged invention. Appx438-39.

John Deere Construction and Forestry Company is a wholly-owned subsidiary of Respondent Deere & Company ("Deere"). Appx52. Deere is headquartered in Moline, Illinois, Appx53, and has its own patents for earth-grading technology: U.S. Patent Nos. 11,028,557, 11,286,641, 10,975,547, and 10,760,243. Appx53, 439-440. The research that led to those patented inventions took place at John Deere Construction and Forestry Company's facilities in Dubuque, Iowa—roughly seventy-five miles from Moline. Appx53. Despite having no working relationship with the Deere Respondents or with any of the named inventors on Deere's patents, Petitioners allege that Deere should have named Armas as a joint inventor on those patents. Appx439-440; Appx450.

Petitioners also allege that two of John Deere Construction and Forestry Company's products—the 333G SmartGrade Compact Track Loader and SmartGrade six-way dozer blade attachment—directly and

indirectly infringe the '300 patent. Appx444. Those products have deep roots in Dubuque. The research and development for those products took place at John Deere Construction and Forestry Company facilities in Dubuque. Appx53. All the inventors named in the four Deere patents work in Dubuque. Appx54-55. The marketing strategies at the heart of Petitioners' false advertising claim were conceived at John Deere Construction and Forestry Company's facilities in Dubuque and Moline. Appx55. Gregg Zupancic, a John Deere Construction and Forestry Company employee whom Petitioners repeatedly reference in their complaint, resides in Le Claire, Iowa, eighty-one miles from Dubuque. *Id.*

## B.    Procedural Background.

Petitioners filed suit in December 2023 in the Southern District of Florida. Appx444-449. The original complaint named only Deere as a defendant. Appx3. Deere moved to transfer this case to the Northern District of Iowa, the district court that includes Dubuque within its boundaries. Appx21. Petitioners responded by amending their complaint to add the remaining Respondents—including Dobbs Equipment, LLC ("Dobbs") and EFE, Inc. ("EFE"), two of John Deere Construction

and Forestry Company's authorized dealerships in South Florida.[1]  John

Deere Construction and Forestry Company sells its equipment through a

nationwide network of 150 dealers with over 1800 locations.  Appx56.

Dobbs and EFE have sold in Florida roughly 20 of the approximately 500

accused products purchased nationwide.  *Id.*  There is no allegation that

Dobbs and EFE have any special knowledge or connection to this dispute

that distinguishes them from any of John Deere Construction and For-

estry Company's 148 other dealers located outside the Southern District

of Florida.

Respondents filed a renewed motion to transfer, which the district

court granted on May 30, 2024.  Appx20.  The district court first deter-

mined that jurisdiction and venue existed in the Northern District of

Iowa because Respondents—including the Florida dealerships—con-

sented to jurisdiction in that district.  Appx6.  The district court then

turned to the § 1404(a) factors, addressing each one in turn with twelve

pages of supporting reasoning.  Appx6-18.  The district court determined

---

[1] Petitioners' amended complaint named Everglades Equipment Corporation as a de-
fendant, but Plaintiffs filed a second amended complaint to substitute EFE for Ever-
glades Equipment Corporation after discovering Everglades is a separate entity un-
related to the issues in this case.  *See* Appx3 n.2.

that several factors weighed in favor of transfer and only one cut against transferring the case. *Id.*

The mandamus petition focuses on three factors. One of those factors is the locus of operative facts. The district court found that the locus of operative facts is the Northern District of Iowa so this factor weighed in favor of transfer. Appx11-13. Consistent with other Southern District of Florida decisions, the Court determined that the "center of gravity" for the litigation—and therefore the locus of operative facts—is where the accused products were designed and developed (which here was Iowa). *Id.* It declined to apply the "expansive" definition of this factor—which considers the location the patented invention was developed as the locus of operative facts— favored by a few out-of-circuit district courts. Appx12. The district court also considered (and rejected) Petitioners' argument that the type of claims in the patent asserted (in this case, method-of-use claims) should matter; Petitioners had provided "no convincing authority that" the locus varies based on whether a plaintiff asserts method or apparatus claims. Appx13.

The district court then turned to the relative means of the parties. The court deemed this factor neutral and decided not to give it "great

weight" because all of the parties but one are corporations and the one individual plaintiff is a "corporate founder[]." Appx14-15. Although Petitioners pointed out that they made significantly less revenue than Respondents, the district court was "unconvinced" Petitioners would suffer any "financial burden" by having to litigate in Iowa. Appx15.

After considering these factors and several others, the district court addressed Petitioners' choice of forum. The district court acknowledged Petitioners' "choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Appx16. The court balanced that forum preference against the "center of gravity" for this action in the Northern District of Iowa. *Id.* It concluded that the strong concentration of operative facts and witnesses in Iowa—the place where the research and development of the accused products occurred and where all the Deere inventors and the marketing manager singled out in the complaint reside—ultimately "outweigh[ed] Plaintiffs' choice to litigate at home." Appx17. In support of that finding, the district court relied on several cases reaching similar conclusions when confronted with similar facts. Appx16.

Petitioners filed their mandamus petition almost a month after the district court's decision, on June 26, 2024.  ECF 2.  The underlying case has been transferred to the Northern District of Iowa.

## REASONS FOR DENYING THE WRIT

The Court should deny the writ, which is an "extraordinary remedy" reserved for "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017).  A petitioner seeking mandamus relief must (1) have "no other adequate means to attain the relief [it] desires"; (2) show there is a "clear and indisputable right" to relief; and (3) demonstrate the writ "is appropriate under the circumstances." *Id.* at 1263-64; *In re BayCare Med. Grp., Inc.*, 101 F.4th 1287, 1290 (11th Cir. 2024).  Respondents do not dispute that, under Eleventh Circuit precedent, the first prong is satisfied when a petitioner challenges a transfer order.  *See Grayson v. K Mart Corp.*, 79 F.3d 1086 n.8 (11th Cir. 1996).  But Petitioners cannot show a clear abuse of discretion that warrants extraordinary relief.

The district court instead correctly analyzed the § 1404(a) factors and appropriately exercised its broad discretion to grant Defendants'

transfer motion.  Throughout its order, the district court tethered its de-
cision to the evidentiary record, Eleventh Circuit precedent, and a long
line of district court cases in the Eleventh Circuit granting transfer mo-
tions in similar circumstances.  Petitioners' mandamus petition, in con-
trast, takes liberties with the record and mischaracterizes the district
court's decision.

There is thus no basis for mandamus here.  Indeed, the Eleventh
Circuit has cautioned that the "use of mandamus to remedy an abuse of
discretion in a district court's decision on a motion to transfer is rare and
generally disfavored."  *In re Segal*, 2011 WL 1582517, at *1 (11th Cir.
Apr. 21, 2011); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor
Inns, Inc.*, 689 F.2d 982, 987 (11th Cir. 1982) ("The writ has rarely issued
to correct a district court's abuse of discretion in granting or denying a
motion to transfer.").  This case is no exception.

## I.    The District Court Appropriately Weighed The Choice-Of-Forum, Locus Of Operative Facts, And Relative Means Factors

A court may transfer an action to a different district "[f]or the con-
venience of parties and witnesses" and "in the interest of justice."  28
U.S.C. § 1404(a).  Determining whether convenience and the interests of

justice support transfer requires a discretionary weighing of nine private- and public-interest factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). After carefully weighing those factors, the district court concluded this action belongs in the Northern District of Iowa. Appx.18.

Petitioners challenge three of the district court's transfer findings, but none of their arguments have merit. The district court properly weighed Petitioners' choice of forum against the other factors. It correctly found that the locus of operative facts for this infringement dispute are in Iowa, where Deere designs and manufactures the accused products. The district court also appropriately gave the relative means of the parties little weight in this dispute between two corporations. None of Petitioners' arguments cast doubt on those findings or the district court's decision to transfer this case.

### A. The District Court Was Not Required To Defer To Petitioners' Choice Of Forum

The district court recognized "a plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations," but concluded the strong "center of gravity" for this action in Iowa "outweigh[s]" Petitioners' "choice to litigate at home." Appx16-17. That judgment call was not an abuse of discretion. A plaintiff's choice of forum is not sacrosanct. *See Hampton-Muhamed v. James B. Nutter & Co.*, 687 F. App'x 890, 892 (11th Cir. 2017) (affirming transfer of action where "[v]arious facts support" district court's decision to transfer case).

District courts in the Eleventh Circuit in fact regularly transfer patent infringement cases where a plaintiff chooses a forum that is not the "center of gravity of the accused activity." *Trace-Wilco, Inc. v. Symantec Corp.*, 2009 WL 455432, at *2-3 (S.D. Fla. Feb. 23, 2009); *see also Implant Seminars, Inc. v. Lee*, 2019 WL 1979365, at *6 (S.D. Fla. May 3, 2019); *Motorola Mobility v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011); *Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002). Like the district court here, these cases all recognize that "[w]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum

is entitled to less consideration." *Motorola Mobility*, 804 F. Supp. 2d at 1276; *see also Balloveras v. Purdue Pharma Co.*, 2004 WL 1202854, *1 (S.D. Fla. May 19, 2004); *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).

Petitioners contend "[t]he Eleventh Circuit has not, and would not," permit the "locus of operative facts" to outweigh "a plaintiff's choice of forum," Pet. 11-12, but *In re Mayfonk* forecloses that argument. 554 F. App'x. 943 (Fed. Cir. 2014). In *Mayfonk*, this Court denied a mandamus petition challenging an order transferring a patent case from Florida to Oregon. *Id.* at 943-44. The district court had held that the "center of gravity" was in Oregon: that was where the accused products were designed and developed and where most of the witnesses lived. *Id.* at 943. This Court acknowledged that "under Eleventh Circuit law the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Id.* at 944 (cleaned up). Applying Eleventh Circuit law, this Court nonetheless held the district court did not abuse its discretion by weighing the center of gravity and other transfer factors more heavily than the plaintiff's choice of forum. *Id.* Petitioners have no response to *Mayfonk*.

13

Petitioners' attempts to distinguish this Court's cases applying Fifth Circuit law are thus irrelevant. Pet. 12-13. This Court does not need to analogize this case to its decisions under Fifth Circuit law to deny relief. Eleventh Circuit law requires that the § 1404(a) factors "clearly outweigh[]" the Petitioners' choice of forum. *Mayfonk,* 554 F. App'x. at 944. As in *Mayfonk,* that is exactly what the district court found here. Appx18. The Court therefore can simply look to its previous decision applying the same Eleventh Circuit precedent that governs here.

Petitioners are also wrong that a plaintiff's choice of forum is virtually unassailable if a plaintiff files suit where it resides. Pet. 11. The Eleventh Circuit has never announced such a rule, and district courts in that circuit have transferred cases away from a plaintiff's home forum. In *Trace-Wilco,* for example, a court transferred a case from Florida to California even though "Plaintiff's two principals are long-standing Florida residents," "the patent was conceived and developed in Florida," and "the inventor of the patent-in-suit is located in Florida." 2009 WL 455432, at *1, 3. The strong center of gravity for the dispute in California and the other transfer factors overcame the plaintiff's home-town preference. The district court here similarly did not violate any Eleventh

14

Circuit precedent by not reflexively deferring to Petitioners' preference to litigate in their home state. *Bouazizi v. Hillsborough Cnty. Civ. Serv. Bd.*, 844 F. App'x 135, 140 (11th Cir. 2021) ("Bouazizi raises no controlling case law that suggests the district court abused its discretion"); *In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014) ("Barnes & Noble cites no Sixth Circuit case that would suggest that the district court erred . . . ..").

The district court's reasoning does not mean "a plaintiff can never bring patent infringement suits in their home forum." Pet. 18. Just as a plaintiff's chosen forum does not receive automatic deference, the district court did not hold that the forum with the strongest locus of operative facts always trumps a plaintiff's preferences. The district court made a case-specific finding about how to weigh the center of gravity for the key facts against Petitioners' preference to litigate in Florida. Appx16-17. As part of that balancing, the court emphasized the undisputed evidence that "[t]he research leading to the invention of the accused products took place in Iowa," that "all the inventors of the Deere Patents live in Iowa," and "the product marketing manager who Plaintiffs repeatedly reference in their pleading lives in Iowa." Appx17. A court may weigh the factors

differently in a case where the center of gravity for the key facts is less concentrated, such as a case where the product development efforts and key witnesses are spread across several states.

Petitioners may disagree with how the district court weighed the competing factors, but the Court's analysis was in-line with well-established and undisturbed precedents for similar fact patterns, and in any event, Petitioners' disagreements do not warrant "the extraordinary relief of mandamus." *In re Mayfonk*, 554 F. App'x. at 944.

## B.   The District Court Correctly Found That The "Locus of Operative Facts" Is In Iowa.

Petitioners separately challenge the district court's factual finding that the "locus of operative facts" for this case is Iowa.  Petitioners offer three arguments for overturning the district court's findings, but none of their arguments prove the district court clearly abused its discretion. The district court's decision is supported by the record and consistent with longstanding Eleventh Circuit precedent.

Petitioners first contend that the district court ignored ties between this action and other states, including Nevada, Oklahoma, and California.  Pet. 14-15.  These locations are relevant, Petitioners say, because Armas demonstrated his patented technology at roadshows in Nevada

16

and Oklahoma while working with Topcon, a California company. Pet. 14-15. At the same time Petitioners were working with Topcon, John Deere Construction & Forestry Company and Topcon were also collaborating. This sequence of events is why, according to Petitioners, Armas should be listed as an inventor on several Deere patents. *See* Pet. 15; Appx440.

This argument falls apart on its own terms. For one thing, the district court did not ignore these facts. In its discussion of the "locus of operate facts" factor, the district court acknowledged "Plaintiffs insist the locus of operative facts 'exists all around the nation.'" Appx11 (quoting Appx241). The court addressed Petitioners' argument that "non-party witnesses [] reside in California, Nevada, and Oklahoma" a few pages earlier. Appx7-8. The district court simply found Petitioners' arguments did not dislodge Iowa as the forum with the strongest factual connection to the parties' disputes.

Regardless, the district court's finding that the Northern District of Iowa is the locus of operative facts is not clearly erroneous. Eleventh Circuit district court decisions have long held that the place where the accused products are designed and developed (here, Iowa) is where the

locus of operative facts exists.  Appx12; *MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at *4 (S.D. Fla. May 13, 2021); *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1225 (S.D. Fla. 2016).  This Court has likewise recognized that the place where the accused products were designed and developed points heavily in favor of transfer to that district.  *E.g.*, *In re Apple Inc.,* 2021 WL 5291804, at *2, 4-5 (Fed. Cir. Nov. 15, 2021) (applying Fifth Circuit law) (concluding that the "center of gravity" was in the Northern District of California where "the research, development, and operation of the accused technology took place there").

The district court—in line with this well-settled case law—considered the facts tied to Iowa and those tied to Florida, weighed them, and ultimately found that they favored Iowa.  Appx5-16.  It noted that, not only were the infringing products designed and developed in Iowa, Appx11-12, but all of the relevant witnesses and evidence were located there as well.  Appx11-13.  That includes many of the witnesses for Petitioners' claim that Armas should be an inventor on several Deere patents.  Those inventors all work and developed their inventions in Iowa.  Appx53-55; *see also* Appx16-17. Iowa is also the source of the alleged false

marketing efforts and the residence of the individual accused of making such false marketing statements. Appx55; *see also* Appx16-17.

That Petitioners view the facts differently is not enough to show an abuse of discretion. *United States v. Engelhard Corporation*, 126 F.3d 1302, 1305 (11th Cir. 1997) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quotation omitted)). Given the extensive ties between this action and Iowa, the district court's analysis was well within the "range of choice," *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005), and it is not appropriate for the Court or Petitioners to "second-guess that determination on mandamus review." *In re Haptic, Inc.*, 2024 WL 3159288, at *2 (Fed. Cir. June 25, 2024); *In re Segal*, 2011 WL 1582517, at *1 ("Writs of mandamus cannot be used as a substitute for an appeal").

Petitioners next argue the district court should have adopted a more expansive test that courts in other circuits apply, which also considers where the alleged invention took place. Pet. 16-17. But courts in the Eleventh Circuit have consistently applied the test the district court used here and have not considered where the alleged invention took

19

place. *See, e.g.*, *MindbaseHQ*, 2021 WL 1923142, at *4; *Carucel*, 157 F. Supp. 3d at 1225; *Motorola Mobility*, 804 F. Supp. 2d at 1276; *Trace-Wilco*, 2009 WL 455432, at *2-3. The district court did not abuse its discretion by applying the test the majority of courts in the Southern District of Florida typically employ rather than an out-of-circuit test Petitioners prefer. And that remains true even though Petitioners found one decision—*Heiber Patent Licensing Corp. v. Wazana Bros. Int'l*, 2010 WL 11626581, *3 (M.D. Fla. Mar. 5, 2010)—that put more weight on where the inventor of the asserted patent resides. The *Heiber* court did not explain why it chose not to apply the usual test, and a district court is not required to follow an unexplained outlier. Appx12 n.7 (distinguishing *Heiber*).

It is far from clear Petitioners' alternative test would meaningfully change the locus of operative facts anyway. Petitioners assert a single patent. Appx436-37. And they seek to add Armas as a named inventor on four Deere patents. Appx439-440. The inventors of those patents all reside in the Northern District of Iowa. Appx53-55. Furthermore, for Petitioners' false advertising claim, the location where the allegedly unlawful content was developed (and where the individual accused of

making the false marketing statements lives) would still be Iowa. Appx55; *see also* Appx16-17. In the unique circumstances of this case, even taking into account where the inventions were made and where the named inventors reside, the locus of operative facts remains in Iowa.

Petitioners' third argument is equally unavailing. Petitioners say that the district court erred by not considering that the claims of the '300 patent are method-of-use claims. Pet. 15-16. According to them, a "[m]ethod of use claims shift the focus towards the use of the accused products in the field." Pet. 16. The locus of operative facts should therefore be, in Petitioners' view, "throughout the nation, but with a bit more emphasis in the SDFL [where] the harm to Petitioners is greatest." *Id.*

There is a fundamental problem with that argument. Petitioners do not cite *any* case law in support of their novel rule that the locus of operative facts is different for method claims. *See Bouazizi*, 844 F. App'x at 140. The district court cannot commit the type of "clear and undisputable" error necessary for mandamus, *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980), by refusing to change the well-established "center of gravity" test in unprecedented ways. *See* Appx13. Indeed, the district court is in good company. Several courts—including this one—have

21

adhered to the "center of gravity" test without modification in cases involving method claims. *In re Mayfonk, Inc.*, 554 F. App'x at 944[2]; *MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at \*5; *Phigenix, Inc. v. Genentech, Inc.*, 2015 WL 10910488, at \*9 (N.D. Ga. Mar. 12, 2015).

There is a reason no court has adopted Petitioners' novel rule: it makes no sense.[3] Whether the asserted claims are directed to a method or an apparatus does not change where the accused products were developed and where the marketing campaigns for those products were crafted (here, Iowa); where the relevant witnesses are based (here, Iowa); or where the relevant evidence and key documents are located (here, again, Iowa). Appx53-55. That's especially true here where Petitioners have never alleged (nor are there any) distinctions between the accused products and the way they are used.

Petitioners' logic also has no stopping point. What's true for "method claims" is equally true for "device claims"—the alleged

---

[2] As the district court in *Mayfonk* noted, the patent at issue there involved "a method for sensing and measuring athletic performance." *Mayfonk, Inc. v. Nike, Inc.*, 2013 WL 12085086, at \*1 (S.D. Fla. June 17, 2013) (quotation omitted).

[3] The one case Petitioners cite, *RegenLab USA LLC v. Estar Techs. Ltd.*, 2017 WL 3535008 (S.D.N.Y. Aug. 17, 2017), is inapposite: it does not mention the locus of operative facts or transfer under § 1404(a). *See id.* at \*6.

infringement occurring throughout the country. Petitioners' argument would thus effectively remove the locus of operative facts from the analysis, since the operative facts would almost always be nationwide. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (holding that nationwide sales gave the citizens of plaintiff's chosen forum "no more or less of a meaningful connection to this case than any other venue"). For that reason, it is little wonder that courts addressing method claims (including this one) have not adopted Petitioners' approach.

In any event, whether the district court should have given more weight to the place of infringement rather than the place where the infringing products were designed and developed is committed to the district court's discretion. The district court did not abuse that discretion by putting more weight on where the products were developed than on the roughly twenty allegedly infringing sales in Florida. Appx56. Those twenty sales account for less than five percent of Deere's total sales of the accused products, which are available from distributors across the country. *See id.*

### C.    The District Court Correctly Found That The Relative Means Factor Is Neutral.

Petitioners also attack the district court's finding that the relative means of the parties was a neutral factor in this suit between two corporations. Petitioners' arguments fail for two separate reasons. The district court correctly analyzed this factor, but even if it hadn't, Petitioners do not show flipping this one factor would require denying the motion to transfer.

As an initial matter, Petitioners misunderstand the relevant test. The factor is not concerned with the relative means of the parties *in the abstract.* Instead, it is concerned with whether a party's "smaller resources would limit its ability to litigate this action." *zIT Consulting GmbH v. BMC Software, Inc.*, 2016 WL 231215, at *10 (M.D. Fla. Jan. 15, 2016); *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1266 (S.D. Fla. 2013) (holding that although the defendant's "means [we]re likely superior" to the plaintiff's means, the plaintiff had "many options" available to control the costs of the litigation). Indeed, in the few cases where courts *have* held that the factor favors the party with lesser means, that party usually lacks means to prosecute the case elsewhere. *E.g.,* *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 355

(E.D.N.Y. 2012) (noting the plaintiff's "precarious financial situation"); *Huntley v. Chicago Bd. of Options Exch.*, 132 F. Supp. 3d 1370, 1375 (N.D. Ga. 2015) (noting plaintiff was "virtually penniless"). There are no allegations by Petitioners that they lack the ability to travel to Iowa to litigate this case—indeed, their allegations suggest just the opposite: Petitioners routinely travel the country and demonstrate their V-Loc System at roadshows. Appx437. The relative means of two corporations is otherwise not a significant factor.

Petitioners again fault the district court for applying the same test as other courts in the Eleventh Circuit rather than out-of-circuit precedent Petitioners find more favorable. The only case from within the Eleventh Circuit Petitioners rely on is *Bartolon-Perez v. Island Granite & Stone, Inc.*, 2014 WL 12513973 (S.D. Fla. Aug. 25, 2014). But the *Bartolon-Perez* court's consideration of the "relative means" factor did not actually consider the relative means between the individual plaintiff and the small business in that case. *See id.* at \*3. The small business likely had more resources than the individual plaintiff. The court nonetheless found this factor supported transfer because "transporting" the small business's five employees from Key West "to Miami, should there be a

trial" would require the small business "to close shop for the day." *Id.* As the district court recognized, however, the transportation costs mattered in *Bartolon-Perez* only because "all actions or omissions giving rise to the dispute" occurred in Key West. *Id.* at *1*; see* Appx14-15 n.9. The same is not true here.[4]

The district court found that it would not be "severely onerous nor expensive" for Petitioners to litigate in Iowa or retain local Iowa counsel. Appx15 (quoting *Grail Semiconductor, Inc. v. Stern*, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013)). This makes sense, especially given most of the witnesses and evidence are in Iowa and Petitioners' so-called "mom and pop" business is making nearly seven figures in revenue a year. Pet. 18-19. This conclusion was reasonable and within the "range of choice" afforded to the district court. *Betty K Agencies, Ltd.*, 432 F.3d at 1337.

Were there any doubt, Petitioners all but admit there is no binding test in the Eleventh Circuit for weighing the relative means of the parties. Pet. 21 ("district courts [have been] developing legal precedent

---

[4] Petitioners' other cases are inapposite. *Baker v. Major League Baseball Properties, Inc.*, involved a company versus an individual. 2009 WL 1098482, at *3 (N.D. Fla. Apr. 22, 2009). And *LeMond Cycling, Inc. v. Trek Bicycle Corp.* turned principally on the fact that both forums were equally convenient. 2008 WL 2247084, at *2 (D. Minn. May 29, 2008).

without appellate review"). Petitioners ask the Court to step in to "correct" what it views as "error manifesting in Section 1404" cases in the Southern District of Florida for the past decade that address relative means between corporations. Pet. 21.

That is not a legitimate reason for mandamus review, which is again limited to clear abuses of discretion. *See Shalhoub*, 855 F.3d at 1263. Petitioners do not point to any Eleventh Circuit law that the district court may have misinterpreted or misapplied. Petitioners instead correctly observe that case law within the Eleventh Circuit supports the district court's conclusion that financial disparity between two companies (and its founder) does not weigh heavily. Appx14-15; *see MindbaseHQ LLC*, 2021 WL 1923142, at *6; *Carucel*, 157 F. Supp. 3d at 1227. The district court did not clearly overstep its authority by finding those decisions persuasive.

## II.    The District Court's Analysis of The Remaining Factors Was Not An Abuse of Discretion.

Petitioners briefly address the remaining transfer factors at the end of their brief, but concede that "they either did not constitute an abuse of discretion" or that their points rehash the arguments addressed above. Pet. 21. None of Petitioners' arguments warrant mandamus or re-

weighing the transfer factors. The district court properly weighed each of the § 1404(a) factors, and this Court should not disturb its discretionary judgments.

Petitioners' grab-bag section first addresses the convenience-of-the-witnesses factor. Petitioners contend that the district court did not weigh this factor appropriately by failing to consider the convenience of witnesses in California, Nevada, and Oklahoma relevant to its inventorship claims. Pet. 21-22. But the district court did consider the convenience of those witnesses, noting they "are geographically closer to Iowa than they are to South Florida," Appx7, and that regardless of the forum those "witnesses may have to travel," Appx8 (quoting *Soler v. Indymac Mortg. Servs.*, 2015 WL 3952620, *2 (S.D. Fla. June 29, 2015)).

Petitioners also object that the district court did not consider whether Florida would be more convenient for Respondents EFE and Dobbs. Pet. 21-22. There is a reason the district court did not address the convenience for any employees of these Respondents who might provide testimony supposedly "proving that the asserted method of use claims is occurring." Pet 22. Petitioners did not raise that issue below. They cannot raise it for the first time on appeal. *See Abraxis Biosci., Inc.*

28

*v. Mayne Pharma (Usa)*, 467 F.3d 1370, 1380 n.8 (Fed. Cir. 2006) (arguments not raised below are waived). Regardless, the convenience of those witnesses is not a significant factor because, as the district court observed, EFE and Dobbs consented to transferring the case to Iowa and joined the motion to transfer. *See* Appx10, 28.

As to the second factor—location of relevant documents—Petitioners say that the district court disregarded that they would need to transport machinery they studied to determine infringement to Iowa. Pet. 22-23. That is simply not true. The district court considered and rejected Petitioners' argument that they would have more trouble transporting heavy machinery to Iowa than Respondents would have transporting their evidence to Miami.[5] Appx9. Moving 14,000-pound machines thousands of miles is difficult, and Deere will likely need to bring its machines to the claim construction hearing or trial. Petitioners, by contrast, have not articulated why they would need to transport their machinery to the court. Patent infringement turns on a comparison of the accused product to the claims, not a comparison of Deere's product to

---

[5] It is true that the district court only mentioned Petitioners' V-Loc System as an example of the heavy machinery Petitioners would have to transport to Iowa. Appx9. But the district court considered the argument all the same.

Petitioners' machines. *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004). Petitioners ultimately offer no valid reason to second-guess how the district court weighed the relative burden.

Finally, regarding the third factor—the convenience of parties—Petitioners contend the district court erroneously found this factor "neutral." Pet. 23. That once again mischaracterizes the district court's decision. Rather than finding this factor neutral, the district court concluded "[t]he convenience-of-the-parties-factor [] does not favor a change in venue." Appx11. Petitioners' complaint that "this factor should have expressly weighed against transfer," Pet. 23, is thus exactly what the district court did. Petitioners have nothing to complain about.

But even if the district court had treated this factor as neutral, that would not have been an abuse of discretion. In *Fruitstone*, the only case Petitioners cite in support of their argument for this factor, the court concluded that the convenience to the parties was the same so the "factor was neutral"—the same conclusion Petitioners now try to paint as a clear abuse of discretion. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d

1268, 1281 (S.D. Fla. 2020); *see also Mason v. Smithkline Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (same).[6]

In the end, Petitioners may wish that the district court had given more weight to certain factors in its transfer calculus. But these disagreements with how the district court weighed the evidence do not show that the district court abused its discretion, much less committed the type of clear and indisputable mistake necessary for mandamus. The district court carefully weighed the evidence and reached the same conclusion as several other district courts in the Eleventh Circuit resolving transfer motions in similar circumstances.

---

[6] Petitioners admit that the district court's analysis of the fifth, seventh, and ninth factors was "reasonable." Pet. 23-24.

## CONCLUSION

The petition should be denied.

July 11, 2024                         Respectfully submitted,

                                      */s/ Jason M. Wilcox*
                                      _____

Brandon Brown                         Gregg LoCascio
KIRKLAND & ELLIS LLP                  Jason M. Wilcox
555 California Street                 KIRKLAND & ELLIS LLP
27th Floor                            1301 Pennsylvania Avenue N.W.
San Francisco, CA 94104               Washington, DC 20004
(415) 439-1400                        (202) 389-5000

                                      *Counsel for Respondents*

# CERTIFICATE OF SERVICE

I certify that on July 11, 2024, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service.

*/s/ Jason M. Wilcox*
Jason M. Wilcox

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMI-TATION

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. According to the word processing system used to prepare this document, the brief contains 6,225 words.

*/s/ Jason M. Wilcox*

Jason M. Wilcox